

VICTORIA M. CARTER
Post Office Box 427
Shingle Springs, CA 95682
(530) 306-2762

Pro Se

FILED
DEC 2 3 2014
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VICTORIA M. CARTER,

    Plaintiff,

vs.

DEPUTY JEREMIAH HAMON,
EL DORADO SHERIFF'S OFFICE,
INDIVIDUALLY AND AS A POLICE
OFFICER, AND DOES 1 THROUGH 10,

    Defendants.

CASE NO. 2:14-CV-2963 KJM CKD PS

COMPLAINT FOR DAMAGES

VIOLATION OF CIVIL RIGHTS

[42 U.S.C. § 1983]

DEMAND FOR JURY TRIAL

### COUNT I
(Assault and Battery)

1.     Plaintiff Victoria M. Carter (Plaintiff) is a citizen of the United States and is a resident with an address of P.O. Box 427, Shingle Springs, California 95682. At the time of the herein incident on December 27, 2012, she lived at 1128 Second Street, # 104, Sacramento, CA 95814 and was visiting her parents' home in Placerville for the holidays while recovering from a grand mal seizure that had caused her to take a leave of absence from graduate school at the University of California at Davis (UC Davis).

2.     Defendant Jeremiah Hamon (Defendant) is now and was at all times mentioned herein a duly appointed deputy within the El Dorado County Sheriff's Office, 300 Fair Lane, Placerville, CA 95667, duly employed as such, and at all times herein mentioned was acting in the course and scope of

such employment and under color of law; and as the employee, agent and representative of every other defendant herein. Defendant is a resident of this Judicial District.

3. The true names of DOES 1 through 10, inclusive, and of each of them, is now unknown to Plaintiff who therefore sues each said defendant by such fictitious name; but upon ascertaining the true identity of a Doe defendant, Plaintiff will amend her complaint or seek leave to do so by inserting same in lieu of such fictitious name.

4. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code § 1983.

5. The court has jurisdiction of this pursuant to Title 28 of the United States Code § 1343.

6. Venue lies in the Eastern District of California pursuant to Title 28 of the United States Code § 1391.

7. On or about December 27, 2012, Plaintiff went for a planned eight to ten mile walk in the gated community of Greenstone Country (Greenstone) in Placerville, California, where she was raised and her parents have been members in good standing and in involved in the governance of Greenstone for over 20 years. Her father had recently retired from the California Department of Justice after 33 years but was not at home, and her mother was about to retire from the California Environmental Protection Agency and was at work and not at home. Plaintiff went for a speed walk at in excess of five miles per hour (mph) while doing "jazzercise" and listening to music on her headset. She had done this many times over the years while attending local Ponderosa High School and training for cross country, ski team, soccer, basketball and other sports, in which she received numerous varsity letters.

8. After approximately a mile, she became aware that she was being followed by a black sports utility vehicle (SUV) that was following her at walking speed. She did not know who was in the vehicle. The vehicle followed her at walking speed for almost a mile. She became increasingly concerned, since she feared another grand mal seizure in an isolated portion of Greenstone. She was so concerned that she cut down a hill of stickers to the home of a woman, where she used to babysit. This woman was a friend of Plaintiff's, as evidenced by the fact that she had agreed to serve as a reference for Plaintiff in the past. Plaintiff knocked on the front door, but there was no answer. She heard voices and entered through the open garage door calling out "Ligia, Ligia."

9. Unbeknownst to Plaintiff, the driver of the SUV was one Lori Lynn Smylie, also known as Lori Hansen (Smylie). Smylie was not and is not now a member in good standing of Greenstone.

She was and is in an acrimonious relationship with Greenstone as a result of three foreclosures, three bankruptcies and other problems involving Greenstone. On December 27, 2012, Smylie had been served with some 11 filings that ultimately resulted in the dismissal of her second bankruptcy, leading to the filing of a third, which was also subsequently dismissed. At issue were questions of misrepresentation. Whether as a result of her problems involving Greenstone and the fact that Plaintiff's parents are involved in the governance of Greenstone or for some other reason, while following Plaintiff at walking speed for almost a mile, Smylie had been calling in 911 reports that Plaintiff was "ripping off her clothing," peddling "crack," and "staggering" with "an open container in a paper bag." These 911 reports proved to be unsubstantiated and no charges were filed as to any of them; however, the seriousness of the reports resulted in the arrival of five sheriff's deputies and a sergeant.

   10.   Defendant arrived within a minute or two. Plaintiff had only just entered the residence, and when she saw through a window a dark figure outside, she thought he was from the SUV that had been following her. Defendant identified himself as "Jeremiah." He did not identify himself as a police officer. Within a couple of minutes Plaintiff realized he seemed to be a police officer and cautiously exited the premises. Defendant ordered Plaintiff to "get on the ground," which order was heard by the two witnesses whose voices Plaintiff had heard, a female housekeeper and a male doing construction work on the premises. The owner was not home.

   11.   As Plaintiff attempted to comply with Defendant's order to "get on the ground," Defendant violently threw Plaintiff into a railing at the top of a flight of stairs, then violently threw her to the ground, and, as she lay "on the ground" "on her back" at the top of the stairs, "pulled her down the stairs" until she was "lying on the ground at the base of the steps of the front door" as the second police officer arrived. She repeatedly struck her head. The above quotations are from the police report.

   12.   The attack by Defendant was unprovoked. It occurred as Plaintiff, a single woman in the presence of multiple police officers, was offering no resistance and was attempting to comply with Defendant's order to "get on the ground." In the context of the 911 reports being unsubstantiated, it occurred during a one count misdemeanor arrest for trespassing involving Plaintiff's going into the garage of a neighbor she knew because she was afraid because she had been followed by a black SUV at walking speed for almost a mile. Defendant's attack was intentional and resulted in injury to Plaintiff as more fully alleged below.

/

/

## COUNT II

### (Fraudulent Concealment of Injury)

13. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though set for here at length.

14. Almost immediately, Defendant called for an ambulance to take Plaintiff to the hospital because Defendant had "pulled her down the stairs pretty good" according to his statement at the time. The ambulance report stated that the ambulance was called "to check her out and make sure she wasn't injured" because Plaintiff had been "dragged down the stairs." The ambulance transported Plaintiff to Marshall Hospital in Placerville. Defendant accompanied the ambulance to Marshall Hospital and remained. At no time did Defendant inform Marshall Hospital personnel that Plaintiff had been "dragged down the stairs" or that she was had been transported by ambulance to Marshall Hospital for treatment for injury. Rather, Marshall Hospital was provided with a blood sample or report, obtained before arrival at Marshall Hospital, that reflected a blood alcohol content (BAC) of 0.34. Medical literature is extensive and consistent that a 0.34 BAC reflects the "stupor" of "surgical anesthesia." Marshall Hospital records had no indication as to BAC and showed no drugs in Plaintiff's system. The hospital records describe Plaintiff as "alert," "oriented x 3," "calm," and "cooperative," but disoriented at times as to where she was and what the date was and appeared "altered" as to "level of consciousness." She was administered "narcotics and/or sedatives" and was allowed to "sleep", which is contraindicated in a case of severe alcohol poisoning due to possible death. Her stomach was not pumped. Defendant remained with Plaintiff at Marshall Hospital. At no time was Marshall Hospital staff notified of possible head injury, or any injury, and at no time was Plaintiff treated for injury, because, according to medical personnel "there was no reason to suspect . . . injury."

15. Quotations in Marshall Hospital records reflect that Plaintiff thought she was in "Davis" and "Sacramento" and did not know that it was the month of December. The police report stated as to Plaintiff at one point that he she "only stared" when questioned. The police report also stated: "Victoria's demeanor was very calm and subdued while inside the [patrol] car. Her pupils appeared normal to slightly constricted for the lighting and her speech was very slow and deliberate. Victoria's mannerisms were also slow and she was unable to maintain a line of questioning for more than 1 or 2 questions before looking away or losing track." These are the symptoms of drugs or concussion. Hospital testing showed no drugs. No officer at the scene mentioned alcohol. Subsequent testing by a

physician with expertise in head trauma, which was delayed for months due to concealment of evidence of injury and Plaintiff's loss of memory due to concussion, resulted in a diagnosis of concussion.

16. Plaintiff was charged with a one count entering and occupying misdemeanor in January 2013 as to the incident in December 2012. Through retained counsel she requested discovery, which was ostensibly provided in January 2013. Not until a formal complaint was filed with the Sheriff of El Dorado County in early 2014, resulting in an Internal Affairs investigation and finding of officer misconduct, was Plaintiff provided with a Digital Video Disk (DVD or video). It was from Defendant's patrol vehicle "Dash Cam." The video showed that Plaintiff had been violently thrown into a railing, onto the ground and down a flight of stairs. Long delayed physician analysis of the video resulted in a conclusion of injury resulting in concussion and other damage.

17. As finally determined by medical evaluation in April 2014, which evaluation was delayed as a result of failure to provide the video and other evidence and denial of injury prior thereto, Plaintiff suffered a concussion as a result of being "dragged down the stairs." Plaintiff for over a year could not remember being "dragged down the stairs" or even being injured, although she was covered with bruises after the incident. The video was not known to Plaintiff until February of 2014 during which time the Internal Affairs investigation resulted in a finding of officer misconduct and production, after over a year, of the video and the 911 party reporting statement as well as a half-dozen other statements. The precise nature of the misconduct was not made known and a Pitchess motion was denied.

18. Until Plaintiff saw the video and met with a physician specializing in head injury, which began to allow her memory to clear as to what had happened, Plaintiff did not know what had happened. She repeatedly attempted to find out without success. As late as December 27, 2013, Michael Frank, M.D., J.D., on behalf of a treating physician at Marshall Hospital, contended by letter that "there was no reason to suspect . . . injury," and a "head CT was not indicated" and "it would have evinced poor clinical judgment if such a test had been ordered." No head CT or any head or other x-ray was ordered or taken, although Plaintiff incurred nearly $10,000.00 in medical bills over a four hour period, which included many tests, including two separate pregnancy tests. Plaintiff received no Concussion Protocol treatment as required in a case of concussion although she had suffered a concussion as a result of being thrown down a flight of stairs and striking her head multiple times. A second concussion greatly increases the damage of a first. Because the DVD was withheld from December 2012 until February 2014, Plaintiff was unable to appreciate the need for treatment or even determine the nature of injury or that there had been injury. Because Defendant concealed from Marshall Hospital that Plaintiff had

suffered injury, Plaintiff was not treated for injury at Marshall Hospital at a time shortly after the incident, when treatment could have ameliorated the damage. She did not receive treatment for head injury for another 16 months.

## COUNT III
### (Fraudulent Concealment of the Falsity of 911 Reports)

19. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though set for here at length.

20. The statement of the 911 reporting party was listed in the police report provided in January 2013 as "Not Approved." As it turned out, the "Not Approved" statement was among over a half-dozen statements that were not provided pursuant to discovery demand in January 2013 and were not provided until February 2014 when the DVD was first made known and provided. Not until a formal complaint was filed with the Sheriff of El Dorado County in early 2014, resulting in the Internal Affairs investigation and finding of officer misconduct, was Plaintiff provided with the statement of reporting party as well as the numerous other statements taken in December 2012. Whereas 911 reporting party Smylie, while following Plaintiff for nearly a mile in her black SUV, had contended in her 911 reports that Plaintiff was "ripping off her clothing," peddling "crack," and "staggering" with "an open container in a paper bag" (quotations are from the 911 reports called in by Smylie), Smylie's statement later that day not only did not corroborate these 911 reports, it did not even mention "ripping off her clothing" (Plaintiff was fully dressed as evidenced by the video), peddling "crack" (there were no drugs as evidenced by hospital testing) or "staggering" (times and locations evidenced by the 911 reports show that Plaintiff traveled nearly 0.8 miles in 8 minutes and 31 seconds, meaning that she was walking at a speed of over 5 mph, not staggering). According to the 911 date/time/location posted, the distance from Plaintiff's location at 2746 Countryside Drive at 11:38:37 to Goldfield Way at 11:47:08 is between 0.7 and 0.8 miles, putting Plaintiff's walking speed at over 5 mph. The "open container in a paper bag" in Smylie's 911 reports was a "beige sports bottle" in her statement." The statement made new allegations, that Plaintiff had been trying to break into houses. It would have been essentially impossible to travel 0.8 mile in 8 minutes and 31 seconds while breaking into houses along the way as she went. Greenstone is a community of multiple acre estates with houses set well back from the street. Because the statement, in addition to the DVD, was withheld from December 2012 until February 2014, Plaintiff did not appreciate the unsubstantiated nature of Smylie's contentions in the 911 report. This contributed to her failure to appreciate the need for treatment or determine the nature of injury or that

there had been injury, in the absence of the video and in the face of being told that there was no reason to suspect injury. Because Defendant concealed from Plaintiff critical statements and a critical video and concealed from Marshall Hospital that Plaintiff had suffered injury, Plaintiff was not treated for concussion in a timely manner, which treatment could have ameliorated the damage.

## COUNT IV

### (False Imprisonment)

21. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though set for here at length.

22. As a result of the unsubstantiated 911 reports and Plaintiff's being thrown down a flight of stairs without justification and so seriously injured as to be unable to explain herself, Plaintiff gained consciousness to find herself handcuffed to a chair and jailed. She was verbally and physically confined against her will and subjected to unreasonable force and violence, as more fully described herein.

23. At all times described above, Defendant had no warrant or lawful process for Plaintiff's imprisonment. Plaintiff was hospitalized for injury as a result of being wrongfully thrown down a flight of stairs by Defendant, but Defendant concealed injury from Marshall Hospital, and Defendant caused the imprisonment of Plaintiff without warrant or lawful process, and for the purpose of covering up the use of excessive deadly (head injury) force on Plaintiff and to discredit and punish her.

## COUNT V

### (False Arrest)

24. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though set for here at length.

25. At all times described above, Defendant had no warrant or lawful process for Plaintiff's arrest. Defendant caused the false arrest of Plaintiff without warrant or lawful process, and for the purpose of covering up the use of excessive deadly (head injury) force on plaintiff and to discredit and punish her.

## CLAIM AS TO DAMAGES

### AS TO ALL OF THE ABOVE CLAIMS FOR RELIEF FOR VIOLATION OF CIVIL RIGHTS

26. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as though set for here at length.

27. Each of all of the acts alleged herein was caused by Defendant to occur under the color and pretense of the statutes, ordinances and regulations of the State of California, and under the

authority of his office as a deputy within the El Dorado County Sheriff's Office. The decision to act upon unsubstantiated, albeit seemingly serious, 911 reports was made by Defendant, who made a deliberate decision to do so, and in the course of doing so, threw Plaintiff into a railing, onto the ground and down a flight of stairs without any justification whatsoever and then caused her to be transported to the hospital for treatment but deprived of treatment at the hospital. Arrest and imprisonment were unwarranted as set forth more fully above. The conduct of Defendant deprived Plaintiff of the right to be free from unwarranted use of force as guaranteed under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States. The conduct of Defendant deprived Plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

    a).    The right of the Plaintiff not to be deprived of life, liberty or property without due process of law, and the right of the equal protection of the laws, secured by the Fourteenth Amendment to the United States Constitution;

    b).    The right to be free from such deprivations with respect to seizures, searches and warrants as guaranteed by the Fourth Amendment to the United States Constitution;

    c).    The right to be free from deprivation as to life, liberty or property, without due process of law as guaranteed by the Fifth Amendment to the United States Constitution; and,

    d).    The right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

    28.    As to all of the facts alleged in the above paragraphs, Plaintiff suffered serious injury, including, but not limited to, concussion, bruising, post-traumatic stress disorder, great mental and physical pain, suffering and shock to her nervous system, great upset, mental anguish, anxiety, torment, emotional distress, humiliation, shame and degradation, all to her general damage in an amount as proved. As a result of continuing memory problems, Plaintiff has been unable to return to graduate school at UC Davis or engage in meaningful occupation. Her physician has informed her that her plans to eventually attend law school may not be possible in that even minor head trauma can severely impact the performance of a professional such as lawyer. As of the filing of this complaint, Plaintiff has been awaiting her misdemeanor trial for almost two years, a trial that has repeatedly been continued against her wishes. In April 2014 a more serious misdemeanor, aggravated trespassing, was filed against her as to the incident in December 2012, even though there is a one year statute of limitations. Plaintiff has demanded a speedy trial without success. Discovery even now continues to be withheld, such as statements first provided on December 15, 2014, the evening before trial on December 16, resulting in

admonishment by the court. That trial date, the fifth trial date in 2014 (March, May, August, November and December) was also again continued against Plaintiff's wishes. This matter continues to plague her and cause her great emotional and physical distress in conjunction with the damage resulting from untreated concussion and post-traumatic stress disorder.

28. The aforesaid acts of Defendant were willful, wanton, malicious and oppressive or done in reckless disregard of the rights, safety and security of Plaintiff, and for the purpose of injuring, oppressing and vexing Plaintiff, and by reason thereof, Plaintiff demands punitive or exemplary damages in an amount as proved.

WHEREFORE, Plaintiff prays for judgment against Defendant(s) as follows:

1. Damages as proved.
2. Punitive or exemplary damages as proved.
3. Interest as proved by law
4. Costs of suit incurred herein;
5. Attorney's fees; and
6. Such other relief as is just and proper.

DATED: December 23, 2014

*/s/ Victoria M. Carter*

Victoria M. Carter

Pro Se

DEMAND FOR JURY TRIAL

DATED: December 23, 2014

*/s/ Victoria M. Carter*

Victoria M. Carter

Pro Se

Post Office Box 427
Shingle Springs, CA 95682
(530) 306-2762

9